UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 3:22-CR-53 JD

CORY THOMAS

**<u>OPINION AND ORDER</u>**

Defendant Cory Thomas has moved under 28 U.S.C. § 2255 to vacate his conviction for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He claims that he received ineffective assistance of counsel at the change-of-plea hearing and at sentencing. At the same time, he's requesting that the Court stay this case until his *coram nobis* proceedings are completed in case number 3:18-CR-55 where he's challenging an underlying conviction for his career offender status. For the below reasons, the Court will dismiss his petition.

### A. Factual and Procedural Background

According to the Presentence Report ("PSR"), Mr. Thomas was riding a motorcycle in May 2022 when he was stopped by police. During the stop, an officer discovered a bag of cocaine in Mr. Thomas's pants.[1] (PSR, DE 40 ¶¶ 7–9, 14–17.) On July 13, 2022, Mr. Thomas was charged in a one-count indictment with possessing cocaine with intent to distribute. (DE 1.) On September 9, 2022, the Government and Mr. Thomas filed a plea agreement with the Court. In the Agreement, Mr. Thomas agreed to plead guilty to the charge in exchange for the Government's promise to recommend that the Court grant him the acceptance of responsibility

---

[1] The bag contained 99 grams of cocaine and 29 grams of cocaine base. (PSR, DE 40 ¶¶ 16–17.)

adjustment under U.S.S.G. § 3E1.1(b) and impose a sentence "at the low end of the applicable guideline range, said guideline range to be determined by the Court." (Plea Agreement, DE 18 ¶ 9(f).) As part of the Agreement, Mr. Thomas affirmed that "I have received a copy of the Indictment and have read and discussed it with my lawyer [Natalie Williams] and believe and feel that I understand every accusation made against me in this case." (*Id*. ¶ 4.) He also stated that Ms. Williams "has counseled and advised with (sic) me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case" (*Id.* ¶ 5), and "I believe and feel that my lawyer has done all that anyone could do to counsel and assist me" (*Id*. ¶ 11). Mr. Thomas also acknowledged that Ms. Williams had reviewed discovery with him: "I acknowledge that I have received all discovery required by law prior to the entry of this plea and that I have reviewed the same with my lawyer." (*Id*. ¶ 9(e).)

Mr. Thomas reaffirmed these views under oath at the change-of-plea hearing, stating that his lawyer had "thoroughly discussed" the Plea Agreement with him, "answer[ed] any questions [he] had to [his] satisfaction," and "properly represented [him] in every way." (Plea Hrg. Tr., DE 61 at 11–12, 19–20, 27.) Mr. Thomas told the magistrate judge that he understood the Plea Agreement and signed it. (*Id.* at 27.) Ms. Williams likewise stated that she had discussed the charge with Mr. Thomas. (*Id.* at 21.) She also affirmed that she reviewed discovery provided by the government. (*Id.* at 35.) She said she believed that the "government could prove [the charge in the Indictment] if the matter went to trial[.]" (*Id.*) In turn, Mr. Thomas said he agreed with that representation. (*Id.* at 35–36.)

Mr. Thomas also affirmed that he and his lawyer had reviewed how the Sentencing Guidelines might apply in his case. (*Id*. at 23-24.) He said he understood that this Court would not only determine the guideline range but could also impose a sentence that differed from the

parties' recommendations or depart from the guideline range. (*Id*. at 23–25.) Agreeing that "there

is just no way for us to know what [the Court] is going to ultimately do," Mr. Thomas reiterated

that he nonetheless wished to plead guilty. (*Id*. at 26–27.)

Following the guilty plea, the probation department issued a PSR. The PSR stated that

Mr. Thomas qualified as a career offender under the Sentencing Guidelines due to his—

- 2003 conviction for possessing cocaine base with intent to distribute in violation

   of 21 U.S.C. § 841(a)(1); and

- 2018 conviction for using a communications facility to commit a drug felony in

   violation of 21 U.S.C. § 843(b).

(PSR, DE 40 ¶¶ 21, 54–55, 60–61); *see also* U.S.S.G. § 4B1.1 (Nov. 2021).

According to the PSR, Mr. Thomas was also convicted in state court in 1993 and 1994

for dealing cocaine, but because of the age of the offenses, no criminal history points were

assigned for those offenses. (PSR, DE 40 ¶¶ 48–51.)

At the sentencing hearing on March 2, 2023, this Court determined without objection that

Mr. Thomas qualified as a career offender based on his 2003 and 2018 drug convictions. (Sent.

Hrg. Tr., DE 62 at 5–6.) The Court independently confirmed that Mr. Thomas qualified as a

career offender based on his two convictions:

> . . . the first conviction mirroring the language of Guidelines Section 4B1.2 and the
> second conviction for use of a communications facility to commit a drug felony, is
> properly considered consistent with the Seventh Circuit's decisions, the Seventh
> Circuit's decision in [*United States v. Mueller*, 112 F.3d 277 (7th Cir. 1997)].

(Sent. Hrg. Tr., DE 62 at 6.)

As a career offender, Mr. Thomas's guideline range was 151 to 188 months of

imprisonment. (*Id*. at 5.) Both parties recommended a sentence at the low end of the guidelines

range. (*Id*. at 16.) Mr. Thomas's lawyer presented argument regarding mitigating factors,

prompting this Court to respond that "there's a lot of truth in what you say" while stressing that Mr. Thomas had engaged in "a repeated course of conduct over much of his lifetime in trafficking drugs, which is illegal, it's wrong, and it's a detriment to the community . . . ." (*Id*. at 9.) The Government, in turn, noted that Mr. Thomas had two cocaine-dealing convictions that were not reflected in his criminal history or his career-offender designation. (*Id*. at 14–15.) The Government also observed that Mr. Thomas was 49 years-old at the time, and that according to the 2022 Sentencing Commission's report on recidivism of federal drug trafficking offenders that were released in the year 2010, "the likelihood of recidivism is lower." (*Id*. at 15.) Consistent with the parties' recommendations, the Court imposed a low-end sentence of 151 months. (*Id*. at 16, 19, 23; Judgment, DE 48 at 1–2.) The Court considered both mitigating and aggravating factors. Mitigators included that Thomas may have been motivated by "the financial needs of his family." (Sent. Hrg. Tr., DE 62 at 9.) On the other hand, he had a "somewhat extensive" criminal history and a prior substantial sentence "did not seem to impact [his] behavior." (*Id*. at 9, 18.)

Mr. Thomas didn't appeal his conviction or sentence, filing instead the instant motion under § 2255. He argues that Ms. Williams provided ineffective assistance of counsel. In addition, he's asking that his petition be put on hold until he finishes his challenge to the 2018 conviction for use of a communication facility to commit a drug felony.

After the Government responded to Mr. Thomas's motion, he filed a reply. Ten days later, he moved for leave to provide additional response, which the Court granted. To date, however, Mr. Thomas has not filed anything further.

**B. Standard of Review**

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). "Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Bousley v. United States*, 523 U.S. 614, 621(1998) (quotation marks and citations omitted).

When interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe the pleadings liberally. *United States v. Rossiter*, 2016 WL 4611013, at *4 (N.D. Ind. Sept. 6, 2016) (collecting cases). Therefore, if a court can reasonably read the petitioner's pleadings to state a valid claim, the court should do so even if the pleadings do not cite proper legal authority, confuse various legal theories, use poor syntax and sentence construction, or display a lack of familiarity with pleading requirements. *Id.* (citing *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). However, a district court is not

5

expected to assume the role of an advocate for a pro se litigant, and it cannot rewrite the litigant's petition to include claims that the litigant did not present. *Id.*

A § 2255 petitioner needs to submit evidence to support his claims; "naked assertions" are not enough. *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002). "[T]he petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (citation omitted). A petition "signed under penalty of perjury" may also suffice to verify the petitioner's allegations so they "*become* evidence." *Kafo*, 467 F.3d at 1068. But unsworn allegations are "not even a scintilla of evidence." *Galbraith*, 313 F.3d at 1008. Verification is a threshold requirement: a "sworn affidavit with specific details" showing the petitioner has "actual proof of the conduct alleged [is] required as a predicate to securing an evidentiary hearing." *Galbraith*, 313 F.3d at 1010; *see also Kafo*, 467 F.3d at 1067. Thus, a petition presenting "merely bare allegations," rather than a "detailed and specific affidavit," fails "the threshold requirement for securing an evidentiary hearing." *Galbraith*, 313 F.3d at 1009. When a § 2255 petitioner fails to file an affidavit or sworn statement but his allegations otherwise would be sufficient, courts generally offer a chance to fix the defect. *Kafo*, 467 F.3d at 1070–71. Still, requiring sworn testimony is more than a "mere technicality"; it "ensure[s] that a petitioner can provide some evidence … however minimal" to back his claim. *Id*. at 1068–69.

A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

**C. Discussion**

**(1)** *Ineffective Assistance of Counsel Claims*

A criminal defendant is entitled to the assistance of counsel for his defense, U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and a defendant who was denied effective assistance of counsel can receive relief under § 2255, *Edmond v. United States*, 899 F.3d 446, 452–53 (7th Cir. 2018). To prevail on a claim of ineffective assistance of counsel, a defendant must show: 1) that his counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and 2) that he was prejudiced by the deficiencies in his counsel's performance, meaning that there is a reasonable probability that the results of the proceeding would have been different with effective representation. *Strickland*, 466 U.S. at 687; *Edmond*, 899 F.3d at 452–53; *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). "Surmounting *Strickland*'s high bar is never an easy task" since "the *Strickland* standard must be applied with scrupulous care." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

As to the first prong, the petitioner must establish that counsel's performance "fell below an objective standard of reasonableness" resulting in a failure to function "as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687–88. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the "wide range" of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "This means identifying acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotation marks and citations omitted). "The important inquiry is

whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Koons*, 639 F.3d at 351 (internal quotation marks and citations omitted).

But even if the petitioner shows that counsel's performance fell below an objective standard of reasonableness, he would still have to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'" *Eckstein v. Kingston*, 460 F.3d 844, 848 (7th Cir. 2006) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome. Indeed, it is insufficient to show only that the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test." *Williams v. Taylor*, 529 U.S. 362, 394 (2000) (endorsing the legal standard articulated by the trial judge). Petitioner bears the "highly demanding and heavy burden of establishing actual prejudice." *Id.*

"Prejudice in the context of a guilty plea requires a showing that but for counsel's deficient performance, [the defendant] would not have pleaded guilty." *Galbraith*, 313 F.3d 1001, 1008. It's worth repeating that "'[s]urmounting *Strickland*'s high bar is never an easy task,' and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.' Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017) (citations omitted). To obtain relief on a claim that an attorney provided ineffective assistance by failing to properly advise a defendant on the consequences of a guilty plea, "a petitioner must convince the court that a decision to reject the

plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). "[A] mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Anderson v. United States*, 981 F.3d 565, 576 (7th Cir. 2020) (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (quoting *Berkey v. United States*, 318 F.3d 768, 772–73 (7th Cir. 2003))).

"If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. "*Strickland*, 466 U.S. at 697. After all, "[t]he object of an ineffectiveness claim is not to grade counsel's performance." *Id.*

(a) *Mr. Thomas's Guilty Plea*

Mr. Thomas argues that Ms. Williams provided ineffective assistance of counsel because, despite his requests, she failed to review discovery materials with him before advising him to plead guilty. He states in particular that he wanted to review "DEA Laboratory Reports and DEA Investigative Reports and any other physical evidence possessed by the Government . . . ." (Def.'s Br., DE 57 at 8.) He also complains that he was not provided *Brady* materials. (*Id.*) He maintains that without reviewing these materials his guilty plea was unknowing, unintelligent, and involuntary and "there is a reasonable probability that he would not have pleaded guilty" had he reviewed the materials. (*Id.*)

But Mr. Thomas's current allegation conflict with his prior statements in the record. Starting with the Plea Agreement, he affirmed that: he "received all discovery required by law" and "reviewed the same with [his] lawyer" (Plea Agreement, DE 18 ¶ 9(e)); his lawyer had "counseled and advised [him] as to the nature and cause of every accusation against [him] and as to any possible defenses [he] might have in this case (*Id*. ¶ 5); and he "believe[d] and fe[lt] that [his] lawyer [had] done all that anyone could do to counsel and assist [him]" (*id*. ¶ 11). Next, at the plea hearing, Mr. Thomas further confirmed these affirmations under oath. He told the magistrate judge that his lawyer had "thoroughly discussed" the Plea Agreement with him and answered all his questions to his satisfaction. (Plea Hrg. Tr., DE 61 at 27.) He said he understood the Plea Agreement and signed it. (*Id*.) Mr. Thomas said he believed his lawyer had "properly represented [him] in every way during the course of these proceedings." (*Id*. at 12.) In turn, with Mr. Thomas at her side, his lawyer told the magistrate judge that she had "discussed the charge and its material elements with [Mr. Thomas]" and believed that Mr. Thomas understood both the charge and the material elements of the charge." (Plea Hrg. Tr., DE 61 at 21.) After the Government's attorney proffered Mr. Thomas's offense conduct, the magistrate judge asked her if she had "an opportunity to review the discovery material provided by the government" and if she believed that the "government could prove this charge if the matter went to trial." (*Id*. at 35.) She answered both questions in the affirmative. When the magistrate judge asked Mr. Thomas whether he, too, believed the Government could prove the charge at trial, he agreed. (*Id*. 35–36.)

When a defendant's post hoc assertions conflict with his prior statements on the record, he generally cannot establish deficient assistance of counsel. The record "is entitled to a presumption of verity," *United States v. Pike*, 211 F.3d 385, 390 (7th Cir. 2000), and the defendant's own statements at the plea hearing are also "presumed to be true," *United States v.*

*Chavers*, 515 F.3d 722, 724 (7th Cir. 2008). "[T]he defendant bears a heavy burden to overcome this presumption." *United States v. Smith*, 989 F.3d 575, 582 (7th Cir. 2021). "[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005).

While Mr. Thomas now contends that Ms. Williams failed to review discovery with him, he offers no explanation—let alone a persuasive one—for why the statements in his Plea Agreement, echoed by multiple affirmations at the plea hearing that he thoroughly reviewed and discussed the agreement with counsel before signing, should be disregarded. His assertion that Ms. Williams "failed to provide discovery material of the Government's case" (Def.'s Rep., DE 68 at 2) merely replaces one set of sworn statements with another. According to Mr. Thomas, the Court should credit his latest account over his prior sworn affirmations—but he gives no reason why it should. In fact, the Court can reconcile the two versions only by concluding that Mr. Thomas was not truthful during the plea proceedings. Put differently, his argument necessarily implies that he committed perjury at the time of his plea—an implication that, rather than supporting relief, only underscores why his claim must be rejected. Given the weight of the burden, Mr. Thomas has failed to carry it. *See United States v. Hayden*, 2013 WL 4026986, at *11 (N.D. Ind. Aug. 7, 2013) (rejecting an ineffective assistance claim because the defendant's allegations were "inconsistent with [his] sworn testimony at the change of plea hearing and his statements in the Plea Agreement itself"). Accordingly, there's no basis for the Court to find that Ms. Williams failed to review discovery materials with him.

But even if the Court were to disregard Mr. Thomas's previous averments in favor of his current claim that Ms. Williams did not review discovery with him, he still would be unable to

show that his counsel provided ineffective assistance of counsel. Here, the Court can skip the deficiency prong of the Strickland analysis because, regardless of whether Ms. Williams failed to review discovery with him, Mr. Thomas has not shown that he was prejudiced. He states he wanted to review the DEA lab and investigative reports, as well as other physical evidence possessed by the Government. But he does not explain what that other evidence consists of, or how it—or the reports—create a reasonable probability sufficient to undermine confidence in the outcome of the proceedings. This is a highly demanding and heavy burden, *see Williams*, 529 U.S. at 394, but Mr. Thomas does not even attempt to satisfy it; at most he parrots the legal standard. Importantly, Mr. Thomas has not shown that, had he reviewed discovery with Ms. Williams, he would have likely made a different decision regarding his plea, that is, he has provided no plausible basis for believing the outcome would have been different. Mr. Thomas pleaded guilty to possessing cocaine with intent to distribute. He admitted to the magistrate judge that he believed the substance was cocaine and he intended to sell it. (Plea Hrg. Tr., DE 61 at 34.) He did not dispute the amount of cocaine he possessed, but even if he had, his statutory sentencing range would have remained the same, as would his Guidelines range, because it was driven by the finding that he was a career offender (*see* PSR, DE 40 ¶ 32; *see also* §4B1.1(b)(3)). Having failed to show prejudice, Mr. Thomas's claim that Ms. Williams provided ineffective assistance of counsel with respect to reviewing discovery must be dismissed. *See Mendoza*, 755 F.3d at 831 (finding no prejudice because the defendant merely provided "conclusory allegations" that his lawyer did not adequately "review[] the evidence with him").

In closing this discussion, a quick word on Mr. Thomas's remark that Ms. Williams rendered ineffective assistance of counsel by failing to make *Brady* materials available for his personal review. He makes no effort to explain how any of the discovery materials were

exculpatory. Moreover, Mr. Thomas has not identified any source for his entitlement to the documents, and many courts have held that there is no such right. *Martinez v. Chandler*, No. 11-2277, 2012 WL 2413512, at *4 (C.D. Ill. June 26, 2012) ("Petitioner cites no United States Supreme Court case in support of his view that he has a constitutional right to view discovery materials. This court is unaware of any Supreme Court decision stating that defense counsel is obligated to share discovery materials with the defendant."); *Gaughan v. United States*, No. 2:02CV169, 2006 WL 2798155 (N.D. Ind. Sept. 28, 2006) (noting that defense counsel had no duty to provide the defendant with access to discovery materials, so the defendant's claim that his counsel "was ineffective for failing to share discovery materials fails under the first prong of *Strickland*"); *White v. Cason*, No. 04-CV-75071, 2006 WL 763194, at *11 (E.D. Mich. Mar. 24, 2006) (holding that counsel was not ineffective since he had no duty to share the discovery with the defendant and the defendant did not demonstrate that the documents were fundamental to his defense); *Ramsden v. Warden, Dept. of Corrs.*, No. Civ. 02-138-B-S, 2003 WL 356031, at *10 (D. Me. Feb. 14, 2003) (holding that counsel was not ineffective, stating: "I could find no case that stood for the proposition that, in order to deliver constitutionally adequate representation, an attorney must provide his client in every case with hard copies of the discovery documents and investigative reports."); *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none."). Without showing that Ms. Williams's representation fell below an objective standard of reasonableness, Mr. Thomas cannot establish deficiency. And as the cases show, Ms. Williams did not have to provide him with any *Brady* materials that might have existed.

13

(b) *Mr. Thomas's Career Offender Status*

Mr. Thomas also claims that Ms. Williams provided ineffective assistance of counsel because she failed to argue that his 2018 conviction for using a communication facility to commit a drug felony in violation of 21 U.S.C. § 843(b) did not qualify as a predicate offense for career-offender status under the Guidelines. This claim is without merit because, even if the attorney had raised this argument, it would have been easily disposed of, and an attorney is "[o]bviously" not deficient for "failing to lodge a meritless objection." *Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010).

On May 7, 2018, Mr. Thomas was charged in an Information with "us[ing] a communication facility (phone) in committing and in causing and facilitating the commission of a drug felony under Title 21, United States Code, Section 841(a)(l) (distribution of cocaine, a Schedule II controlled substance)" in violation of 21 U.S.C. § 843(b).[2] (Indictment in 3:18-CR-55, DE 1.) That same day, the parties filed a plea agreement. In the Agreement, Mr. Thomas agrees to plead guilty to the charge and sets out his offense conduct:

(a) I agree to plead guilty to Count 1 of the Information that charges me knowingly using a communication facility in causing or facilitating another felony, in violation of Title 21, United States Code, Section 843(b), because I am GUILTY of the offense.

(b) I agree that the following facts are true and that they shall form the factual basis for my guilty plea: I hereby acknowledge that on December 7, 2017, I used a phone call to facilitate a narcotics transaction with an individual I did not know was working for law enforcement. I had been involved with this individual before and knew that this call was to further a narcotics transaction. In fact the call did facilitate a cocaine sale. This phone call was in the Northern District of Indiana.

---

[2] Section 843(b) prohibits "any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II."

(Plea Agreement in 2:18-CR-55, DE 2 ¶ 9(a)-(b).) Subsequently, Judge Robert Miller sentenced Mr. Thomas to time-served. (Judgment in 2:18-CR-55, DE 18.)

When the Court sentenced him in this case, it found that the 2018 conviction constituted the commission of a predicate controlled substance offense for a career offender status. (Sent. Hrg. Tr., DE 62 at 6.) In making this finding, the Court specifically relied on *United States v. Mueller*, 112 F.3d 277 (7th Cir. 1997), which held that the use of a telephone in the commission of a drug offense is a "controlled substance offense" for determining "career offender" status under the Sentencing Guidelines. *Id*. at 283. The court reasoned that the statute effectively prohibits the same conduct as is prohibited by "controlled substance offenses" because it requires the commission, causing, or facilitation of an independent drug crime.

Also, since *Mueller* was decided, Application Notes to § 4B1.2 were amended to include § 843(b) within the definition of a "controlled substance offense."[3] *See United States v. Allen*, 909 F.3d 671, 676 (4th Cir. 2018). At the time this Court sentenced Mr. Thomas's, Application Note 1 to § 4B1.2 provided:

> Using a communications facility in committing, causing, or facilitating a drug offense (21 U.S.C. § 843(b)) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense committed, caused, or facilitated) was a "controlled substance offense."

§ 4B1.2 (2021). An application note is binding unless it "'violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of that Guideline.'" *United States v. Tate*, 822 F.3d 370, 375 (7th Cir. 2016) (quoting *United States v. Dyer*, 464 F.3d 741, 743 (7th

---

[3] Section 4B1.2(b) states:
The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Cir. 2006)). Nothing here suggests that Application Note 1 suffers from any such defects. Mr. Thomas's underlying offense under his § 843(b) conviction was distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), which is a "controlled substance offense," so his § 843(b) conviction is also a "controlled substance offense."

Disregarding *Mueller* and the Sentencing Guidelines, Mr. Thomas appears to argue that § 843(b) is not a "controlled substance offense" because, unlike offenses covered by § 4B1.2, it does not require the commission of the underlying drug offense for a conviction. (*See* Def.'s Br., DE 55 at 910.) In other words, he contends that the elements of § 843(b) do not align with the definition of a "controlled substance offense." In support, he cites the Sixth Circuit's decision in *United States v. McGhee*, 854 F.2d 905 (6th Cir. 1988). But *McGhee* contains no such holding. Rather, it held that the government may not charge a defendant with "attempt to facilitate possession and distribution" under § 843(b), because proving facilitation of possession and distribution requires proof that the underlying offense was completed. *Id.* at 908 (overruled on other grounds) (quoting *United States v. Rey*, 641 F.2d 222, 224 n.6 (5th Cir. 1981)). "An "attempt to facilitate possession and distribution" charge then, is an effort by the government to avoid the requirement of proving the completed object. It is a failed effort however, because the government may avoid the requirement of proving actual "possession and distribution" of a narcotic only by charging either attempt as a substantive offense pursuant to § 846 or by charging attempt as the underlying offense pursuant to § 843(b). However, "an attempt to facilitate" charge is neither, and fails to state a cognizable offense under the Drug Abuse Act." *Id*. If anything, *McGhee suggests* that using a communication facility to facilitate a drug offense requires a commission, or an attempt to commit, a drug offense. This is consistent with *Mueller*.

*See id.* at 281–82 ("[A] defendant cannot be convicted of using a telephone to facilitate a drug offense unless the defendant also aids or abets, or attempts to commit, the drug offense itself.").

Mr. Thomas also urges the Court to use a "categorical approach" in determining whether there is a mismatch between the elements of § 843(b) and the definition of a "controlled substance offense" in 4B1.2(b).[4] But as already noted, Application Note 1 to § 4B1.2(b) incorporates the elements of § 843(b), so long as the "the underlying offense (the offense committed, caused, or facilitated) was a 'controlled substance offense." App. n.1, § 4B1.2(b). The Court finds Application Note 1 authoritative in deciding whether Mr. Thomas's attorney should have challenged his career offender status.

"Applying the Supreme Court's decision in *Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), [the Seventh Circuit has] repeatedly deferred to Application Note 1 as the Sentencing Commission's authoritative interpretation of the career-offender guideline." *United States v. White*, 97 F.4th 532, 535 (7th Cir.), cert. denied, 145 S. Ct. 293 (2024). Just last year, the court reaffirmed its position in *White*, in response to the defendant's challenge to overrule this circuit caselaw. *Id.* at 535. When White was sentenced, "[u]nder the version of the Guidelines then in effect, the definition of "controlled substance offense" did not address inchoate offenses like conspiracy. But the commentary did: Application Note 1 explained that the term 'controlled substance offense' includes 'aiding and abetting, conspiring, and attempting to commit such offenses.'" *Id.* (citations omitted). Relying on *Kisor v. Wilkie*, 588 U.S. 558 (2019), White argued "that the definition of 'controlled substance offense' in § 4B1.2(b) is clear on its face and does not mention inchoate offenses. It follows, he [said], that

---

[4] Mr. Thomas contends that "aiding and abetting" lacks a categorical match (Def.'s Br., DE 55 at 9–10), but the argument as presented lacks coherence. Nonetheless, since Mr. Thomas is pro se, the Court construes his argument in the light most favorable to him.

Application Note 1 deserves no deference because the guideline's text unambiguously excludes inchoate offenses." *Id*. The court held that Application Note 1 did not impermissibly expand the Guidelines' definition of "controlled substance offense." Observing a 6 to 6 split among the circuits on this issue, the court declined to overrule its circuit precedent that defers to Application Note 1. The court noted that *Kisor* did not disturb *Stinson* or the circuit's precedent treating Application Note 1 as an authoritative gloss on the career-offender guideline. *Id*. at 539.

In light of *White*, the Court finds no merit in Mr. Thomas's effort to disregard the plain language of Application Note 1 as it applies to his prior offense. Consequently, Ms. Williams's decision not to pursue this argument does not amount to ineffective assistance of counsel.

Again, Ms. Williams was not obligated to press an objection that was "meritless" under both controlling precedent and the guidance of the Sentencing Commission. *Northern*, 594 F.3d at 561. Since Ms. Williams cannot be faulted for adhering to established law, Mr. Thomas has failed to show that she was deficient. *See Lickers v. United States*, 98 F.4th 847, 857 (7th Cir. 2024) ("Nor is counsel required to make arguments that have little chance of success. Just because an argument has some remote chance of prevailing does not mean that a lawyer is constitutionally deficient for failing to bring it. Whether a lawyer provides ineffective assistance by failing to raise an argument depends in important part on its likelihood of success.").

(c) *Downward Variances*

Next, Mr. Thomas submits that his lawyer provided ineffective assistance of counsel because she failed to ask for a downward variance in his sentence. He believes he had two good arguments for a reduced sentence. According to Mr. Thomas, Ms. Williams should have invoked a 2016 Sentencing Commission report urging Congress to "amend" the statutory career-offender

18

directive (28 U.S.C. § 994(h)) to distinguish between offenders who committed a violent offense and those who exclusively committed drug offenses; the report favored such an amendment because it would enable the Commission to "restructure" the career-offender guideline to distinguish between such offenders. Second, Mr. Thomas submits that Ms. Williams should have raised the conditions of his pretrial confinement during the COVID-19 pandemic.

The Sixth Amendment requires effective assistance of counsel, but it does not mandate that an attorney make every possible argument. This is especially true when the arguments are weak. The attorney's performance must meet an objective standard of reasonableness, focusing on strategic decisions that are informed and based on professional judgment. The Court finds that Mr. Thomas hasn't established that Ms. Williams has failed to meet this standard.

To understand why the omissions do not rise to the level of violating the Sixth Amendment, it may be best to first consider what Ms. Williams did do before and at sentencing. Ms. Williams submitted eighteen letters of support on behalf of Mr. Thomas. In her sentencing memorandum, she effectively highlighted a multitude of mitigating factors. For example, she detailed his childhood and how that affected his later development; she gave the reasons for why he got involved into the drug trade; she explained that he was not a gang member; she addressed his reputation as a family man and good husband and father who had four adult and two minor daughters. Ms. Williams also discussed his academic achievements, his stable employment history, and the hardship of undergoing bankruptcy that may have motivated the offense. Ms. Williams then addressed Mr. Thomas's acceptance of responsibility. She identified three studies about correlation between severity of the sentence and deterrence, arguing that longer sentences are not necessarily more effective than the shorter ones, especially when the offender is not dangerous:

Regardless of the type of crime, empirical studies show there is no relationship between sentence length and general or specific deterrence, and according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Furthermore, the Charles Colson Task Force, created by Congress, recommends incarceration only for the truly dangerous persons and finds that incarceration "takes a damaging toll on the mental health of those serving time, many of whom exhibit higher rates of depression, post-traumatic stress disorder, and other mental illnesses."

(Sent. Memo., DE 44 at 6–7.)

Ms. Williams also pointed out that Mr. Thomas would take advantage of every learning and growing opportunity that is provided to him while serving his sentence.

Moreover, at sentencing she reiterated and further explained what she wrote in the sentencing memorandum:

Your Honor, Mr. Thomas, as indicated, has had two prior convictions in this court. However, I do not believe that is the sum total of who he is as a man. I like to think of Mr. Thomas kind of like a biscuit with many layers, and sometimes when you overcook it, it gets burned, but you don't really discard the whole biscuit. You kind of take the top off, still keep going down the middle. That's Mr. Thomas. In the middle, he's a father. He's a grandfather. He's a husband. He is a best friend. He is a nephew. He is loyal to those in his community that he feels hold him deeply, and this particular situation, even though he was wrong, and he will admit that fault, your Honor, but he did so in desperation to support his wife and his children. Mr. Thomas was released from custody and completed supervised release and was living a good life. He was working as a dental assistant until he had a car — I mean a motorcycle accident that fractured his spine, injured his hands, and he was unable to work. And what the blessing that they thought they received was a house ended up being a burden that ended up in foreclosure and bankruptcy being filed, where 80 percent of his wife's income is now gone to bankruptcy, and he cannot work to support his family. I can't say what anyone else would do in that situation. I can't stand here and say that I wouldn't have done something to support my family, but given his criminal history and his inability to work, he did what he thought he had to do to make sure that there was food on the table, lights in the house, and his children had clothes on their backs. It was not intended to live a lavish life of luxury because they didn't have that. It was to merely survive. Yes, he made a wrong choice, but in that choice, it was to take care of his family, and there is some honor in that.

(Sent. Hrg. Tr., DE 62 at 7–8.)

These arguments got the Court's attention, even if the overall balance of Mr. Thomas's actions tended to undermine the mitigating factors:

> THE COURT: Thank you, Ms. Williams. You know, just to comment, Ms. Williams, there's a lot of truth in what you say. You know, good people do bad things, and what Mr. Thomas did doesn't make him a bad person, and it's important that we sentence the crime and we sentence the person, and I accept that his crime may have been motivated by the financial needs of his family. By the same token, though, his conduct here is very consistent with his history, his repeated history, of engaging in drug transactions, which perhaps might undermine the motivation for his conduct. Nonetheless, while there are many mitigating factors in this case, I am struck as well by the fact that this is a repeated course of conduct over much of his lifetime in trafficking drugs, which is illegal, it's wrong, and it's a detriment to the community that he seems committed to serving. So I just want to make those observations and will likely make those observations under the 3553(a) discussion as well.

(*Id*. at 9.) Ms. Williams's sentencing memorandum and her representations at sentencing, as well as the Court's reaction to her arguments, show her effectiveness. The Court is not persuaded that her omission to bring up the 2016 Sentencing Commission report and the pretrial detention conditions during the COVID-19 pandemic placed her outside the realm of reasonable representation. After all, in her sentencing memorandum, Ms. Williams cited the three studies suggesting that, absent concerns for violence, longer sentences do not have a greater deterrence value than shorter sentences. Adding the 2016 Report thus had limited value, especially given that Congress did not act on the Report and the Guidelines continued to extend similar treatment to violent and drug-only offenders. And as for pretrial detention conditions during the COVID-19 pandemic, they were not unique to Mr. Thomas. All detained persons during this period of time experienced the same or similar conditions and this argument could have taken attention away from more important mitigating factors. Moreover, Mr. Thomas was arrested in July 2022, more than a year after COVID-19 vaccines became widely available, making his argument even less persuasive. *Cf. United States v. Diggs*, No. 20-3061, 2021 WL 3440728, at *2 (7th Cir. Aug.

21

6, 2021) ("Finally, Diggs argues that the judge glossed over his mitigation argument that the COVID-19 pandemic has made time in prison 'more difficult and dangerous.' But the judge needn't have commented on such a 'generic challenge,' given that Diggs did not suggest that he was more at risk of COVID-19 in prison than any other prisoner. *United States v. McLaughlin*, 760 F.3d 699, 707 (7th Cir. 2014). Further, to the extent that conditions arising from COVID-19 provide any mitigating argument, the Bureau of Prisons has now made vaccines available to inmates, and Diggs has not asserted that the Bureau has denied him access to a vaccine or that he is medically or otherwise unable to receive or benefit from one."). The Court sees no reason to second-guess Ms. Williams's strategic choices and thus finds no constitutional deficiency in her advocacy at sentencing. Claims of ineffective assistance of counsel require the defendant to demonstrate that the attorney's performance was objectively unreasonable, but given the weakness of the arguments that Mr. Thomas proposes, the Court is unable to draw such a conclusion on the question of downward variance. *See United States v. Cruz-Velasco*, 224 F.3d 654, 664 (7th Cir. 2000) ("Absent a showing that trial counsel chose not to ask for an obviously applicable departure without any justification for his actions, we cannot conclude that his performance was objectively unreasonable.").

But even if Ms. Williams was deficient with respect to sentencing, Mr. Thomas has not shown that there is a reasonable probability that he would have received a different sentence. Again, Mr. Thomas provides only conclusory allegations that parrot the legal standard, which is not enough to establish prejudice. *See, e.g.*, *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) (holding that the defendant could not show prejudice because he merely relied on "'allegations'" rather than "'evidence'"). Mr. Thomas fails to appreciate that, although the court was not presented with the 2016 Report, Ms. Williams relayed similar information in the form of

22

the three studies noted in her sentencing memorandum. In addition, the Court was aware of the effects of the pandemic on pretrial detentions and prison conditions. It simply cannot be said that expressly raising the 2016 report or detention conditions would have had a reasonable probability that Mr. Thomas's sentence would have been different.

(d) *Mr. Thomas's Claims Raised for the First Time in the Reply Brief*

In his Reply brief, Mr. Thomas states for the first time that Ms. Williams never discussed "subject-matter jurisdiction concerns prior to plea or concerns about his career offender designation and the advisory nature of the U.S. Sentencing Guidelines." (Def.'s Rep. Br., DE 68 at 2.) There are three problems with these assertions. First, the contentions raised for the first time in a reply brief are waived because the Government has not had a chance to address them. *See, e.g.*, *Farmer v. United States*, No. 11-CR-40073-JPG-001, 2015 WL 588569, at *1 (S.D. Ill. Feb. 11, 2015), aff'd, 867 F.3d 837 (7th Cir. 2017) ("Farmer advances in her reply brief several arguments she had not raised in her earlier briefing. The Court disregards these arguments, which she could have and should have made in her original briefing. It has long been established that arguments in support of a § 2255 motion that are raised for the first time in a reply brief are waived. This rule holds true even if the movant is proceeding pro se. This is because the opposing party does not have an opportunity to respond to the new arguments in the reply brief.") (citing *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998)); *see also Whipp v. Miller*, No. 22-CV-1350-JPS, 2024 WL 3470344, at *3 (E.D. Wis. July 19, 2024) (noting that an issue raised only in the reply brief is waived).

Second, these contentions are mere allegations, not backed up by any factual submissions, including affidavits. A § 2255 petitioner needs to submit evidence to support his

claims; "naked assertions" are not enough. *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002). "[T]he petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (citation omitted). A petition "signed under penalty of perjury" may also suffice to verify the petitioner's allegations so they "become evidence." *Kafo*, 467 F.3d at 1068. But unsworn allegations are "not even a scintilla of evidence." *Galbraith*, 313 F.3d at 1008.

Finally, beyond what the Court stated above, Mr. Thomas says nothing else about these three issues. By failing to at least create a semblance of an argument, Mr. Thomas has further waived these claims. *See United States v. Edwards*, 733 F. Supp. 3d 644, 647-48 (N.D. Ill. 2024) (finding that the defendant who fails to develop an argument in his motion under § 2255 waives that contention "for failure to develop it or support it with legal authority") (citing *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (noting on review of § 2255 petition that "this court has repeatedly and consistently held that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived")). "[J]udges are not . . . required to construct a party's legal arguments for him." *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). The Court thus will dismiss these claims along with the others.

**(2) *Mr. Thomas's Request for a Stay***

Mr. Thomas requests a stay of these proceedings under *Purvis v. United States*, 662 F.3d 939 (7th Cir. 2011), because he is challenging his 2018 conviction for using a communication facility to commit a drug felony in case number 3:18-CR-55. He states that the conviction "will likely be vacated through a Writ of Error of Coram Nobis Petition." (Def.'s Br., DE 57 at 21.)

Lacking, however, in this contention is any argument that Mr. Thomas has actually good cause for his request or that his claim is potentially meritorious.

In *Purvis*, the Seventh Circuit held that a district court may stay postconviction proceedings challenging a sentence based on certain predicate convictions while the defendant collaterally attacks the predicate. This remedy was appropriate in *Purvis* because there was "good cause" to believe the predicate conviction would be vacated, as "a state court decision to vacate his predicate conviction was [im]minent and . . . his attorney and the prosecutor had agreed to vacate his conviction and plead down his initial charge." *Id.* at 945. But, the Court stressed, such stays "should be limited to narrow circumstances" where "there is good cause for the petitioner's stay request" and "the claim is potentially meritorious." *Id*. (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)).

Here, apart from stating that his predicate conviction is "INVALID or UNCONSTITUTIONAL" (Def.'s Br., DE 57 at 21), Mr. Thomas has provided no grounds for the Court to conclude that he has good cause for his request or that his claim is potentially meritorious. He offers no explanation as to why this assertion is likely to succeed—particularly given that he expressly waived any right to contest his 2018 conviction in his Plea Agreement. (*See* Plea Agreement in 3:18-CR-55, DE 2 ¶ 9(e).) Without articulating the basis for that challenge, Mr. Thomas has not shown that it is "potentially meritorious" or that the Court is confronted with the "narrow circumstances" identified in *Purvis*. *Id*. at 945.

### E. Certificate of Appealability is Unwarranted

The Court declines to issue a certificate of appealability. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Section 2255

Proceedings for the United States District Courts. The substantial showing standard is met when

"reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

been resolved in a different manner or that the issues presented were 'adequate to deserve

encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting

*Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717

(7th Cir. 2008). For the reasons the Court already discussed in denying the motion, the Court

does not believe that the resolution of this motion is debatable or that the issues deserve

encouragement to keep proceeding.

The Court advises Mr. Thomas, though, that under Rule 22(b) of the Federal Rules of

Appellate Procedure, when the district judge denies a certificate of appealability, the applicant

may request a circuit judge to issue the certificate. If Mr. Thomas wishes to appeal this

judgment, a notice of appeal must be filed within 60 days after the judgment is entered. Rule 11,

Rules Governing Section 2255 Proceedings for the United States District Courts; Fed. R. App. P.

4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006).

### F.  Conclusion

For these reasons, the Court—

- GRANTS Mr. Thomas leave to add his brief into the record (DE 57); and

- DISMISSES all of his claims under § 2255 (DE 55).

SO ORDERED.

ENTERED: April 29, 2025

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court